UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

WILLIAM ARAUJO,

   Plaintiff,        NOT FOR PUBLICATION

 - against –         **MEMORANDUM & ORDER**

THE CITY OF NEW YORK, THE NEW YORK CITY  08-CV-3715 (KAM) (JMA)
POLICE DEPARTMENT, THE NEW YORK CITY
DEPARTMENT OF CORRECTIONS, DETECTIVE
TAMMIE ORDONEZ and DETECTIVE "JOHN DOE"
(said name being fictitious, as his true
name is presently unknown), individually
and in their official capacities,

   Defendants.

--------------------------------------X

MATSUMOTO, United States District Judge:

   Plaintiff William Araujo commenced this action on

September 12, 2008 against the City of New York (the "City"),

the New York City Police Department (the "NYPD"), the New York

City Department of Corrections (the "DOC") (collectively, the

"Municipal Defendants"), and NYPD Detectives Tammie Ordonez and

"John Doe" (collectively, the "Individual Defendants").[1]

Plaintiff claims that (1) the Individual Defendants deprived him

of his rights under the Fourth, Fifth, Sixth, Eighth and

Fourteenth Amendments to the Constitution, in violation of 42

U.S.C. § 1983 ("Section 1983"); and (2) the constitutional

violations occurred as a result of a custom, policy, usage, or

--------------------------------------

[1] This case was initially assigned to the Honorable Charles P.
Sifton and subsequently reassigned to the undersigned on
November 24, 2009.

rule maintained by the Municipal Defendants. (*See generally*, Doc. No. 1, Complaint ("Compl.") ¶¶ 1, 7-13.) Plaintiff also alleges violations of 42 U.S.C. §§ 1981 and 1988.[2] (*Id.* ¶¶ 1-2.) Plaintiff claims that the Individual Defendants are liable in their individual and official capacities. (*Id.* ¶ 10.)

Presently before this court is the Municipal Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Although defendants' Notice of Motion indicates that only the Municipal Defendants seek judgment on the pleadings, defendants' memorandum of law in support of the motion seeks dismissal of plaintiff's Complaint in its entirety, including as against the Individual Defendants. (*See* Doc. No. 20, Defendants' Memorandum of Law ("Defs. Mem.") at 5-11, 13.) Plaintiff's counsel received notice of

---

[2] Although the Complaint cites 42 U.S.C. §§ 1981 and 1988 in the sections titled "Preliminary Statement" (Compl. ¶ 1) and "Jurisdiction" (*id.* ¶¶ 2-3), neither the Complaint nor plaintiff's opposition to defendant's instant motion make further mention of, or allege any claim for relief under, either section. Section 1981 was "meant, by its broad terms, to proscribe discrimination in making or enforcement of contracts against, or in favor of, any race." *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (citation and internal quotation marks omitted). Section 1981 is inapplicable to this action because plaintiff does not allege that he was discriminated against based on his race or that any contract is involved in this suit. Moreover, Section 1988 does not confer a substantive right; rather, it permits the recovery of attorney's fees by prevailing parties in civil rights actions. *Guadagni v. New York City Transit Auth.,* No. 08-CV-3163 (CPS), 2009 WL 1910953, at *10 (E.D.N.Y. June 30, 2009). Accordingly, to the extent plaintiff alleges claims under Sections 1981 and 1988, those claims are dismissed as to all defendants.

defendants' motion and has filed opposition papers addressing arguments relating to all defendants. (*See* Doc. No. 22, Plaintiff's Memorandum of Law ("Pl. Mem.").)  The court considers the motion as one made by all defendants and, for the reasons set forth herein, the motion is granted in part and denied in part.

**BACKGROUND**

The following facts are drawn from plaintiff's Complaint and are taken as true for purposes of this motion. Plaintiff is a resident of Queens County in the State of New York.  (Compl. ¶ 6.)  Defendant City of New York is a municipality of the State of New York.  (*Id.* ¶ 7.)  Defendants NYPD and DOC are municipal agencies of defendant City.  (*Id.* ¶¶ 8-9.)  Defendants Tammie Ordonez and "John Doe" are detectives employed by defendant NYPD.  (*Id.* ¶ 10.)

On October 5, 2006, at approximately 12:00 p.m., plaintiff was arrested at his home by defendant detectives Ordonez and Doe.  (*Id.* ¶ 14.)  Plaintiff alleges that the arrest was made without a warrant, based on a complaint by a seven-year-old girl, J.D.,[3] made two days earlier, that plaintiff had

---

[3] Plaintiff's Complaint refers to the alleged infant complainant by her full name, in contravention of the Federal Rules of Civil Procedure and an Administrative Order of this court requiring parties to refer to minors in court filings by their initials. *See* Fed. R. Civ. P. 5.2 (adopted in compliance with E-Government Act of 2002, Pub L. 107347, 116 Stat. 2899 § 205(c)(3) (2002))

sexually abused her on several occasions approximately three and one-half to four and one-half years earlier.  (*Id.* ¶ 15.) According to the Complaint, "[a]mong the allegations made by the complainant [J.D.] against Plaintiff was the claim that Plaintiff on some occasions" masturbated and ejaculated.  (*See* Compl. ¶ 17.)  Plaintiff alleges that J.D.'s father is a retired NYPD officer.  (*Id.* ¶ 16.)

After plaintiff was arrested, he was transported to the Queens Special Victims Unit of the NYPD, where he was questioned for approximately two hours.  (*Id.* ¶¶ 18, 24.) Plaintiff alleges that prior to being questioned, he asked the Individual Defendants whether he needed an attorney and was told that he did not.  (*Id.* ¶ 22.)  Plaintiff also asserts that he was not read his *Miranda* rights before his custodial interrogation.  (*Id.* ¶ 23.)  During the questioning, plaintiff informed the Individual Defendants that he had been "impotent for more than ten years, including during the time he allegedly sexually abused the complainant, and was unable during the time of the alleged abuse to have an erection or to ejaculate."  (*Id.*

---

(directing the Supreme Court to prescribe rules to protect privacy and security concerns relating to electronic filing of documents); E.D.N.Y. Administrative Order 2004-09, *available at* http://www.nyed.uscourts.gov/pub/docs/adminorders/adminorder04-09.pdf [last visited March 19, 2010].  Plaintiff shall immediately contact the Clerk's Office and arrange for the substitution of the present Complaint with one that refers to the complainant only by her initials.

¶ 25.) According to plaintiff, Detective Ordonez telephoned
plaintiff's wife and inquired whether plaintiff was then
currently, and was at the time of the alleged incidents,
impotent. (*Id.* ¶ 27.) Plaintiff's wife confirmed that
plaintiff was impotent and had been so during the relevant time
period. (*Id.*) Notwithstanding the statements by plaintiff's
wife, plaintiff was handcuffed and placed in a cell in the
precinct. (*Id.* ¶ 28.)

Plaintiff then informed the Individual Defendants that
he needed various medications for his diabetes, high blood
pressure, and post traumatic stress disorder. (*Id.* ¶ 29.)
Plaintiff alleges that the Individual Defendants returned to
plaintiff's home and retrieved his medications. (*Id.* ¶ 30.)

Plaintiff was then transported from the Special
Victim's Unit to the 112th police precinct and fingerprinted,
and subsequently taken to Queens Central Booking, where he
remained for "several hours" before being arraigned on a felony
complaint. (*Id.* ¶¶ 31-33.) The court set bail at $25,000 and
issued an Order of Protection requiring plaintiff to stay away
from the complainant. (*Id.* ¶ 33-34.)

At approximately 1:00 a.m. the following morning,
October 7, 2006, plaintiff was released from a DOC facility in
the Bronx upon the payment of bail. (*Id.* ¶¶ 35-36.) Plaintiff
alleges that "[d]espite his numerous requests of members of

[the] NYPD and DOC," he was not permitted "to take his required medications while in the custody of NYPD or DOC, resulting in high blood sugar and worsening and aggravation of diabetes, blood pressure, and post traumatic stress disorder." (*Id.* ¶ 37.)

Plaintiff alleges that as a result of the criminal charges, he was obligated to appear in Queens Criminal Court on approximately seven occasions, check in weekly with a bail bondsman, was prevented by the Order of Protection from attending his church and shopping at certain stores which he previously had frequented, and was required to spend $7,700 to retain counsel to represent him in the criminal case. (*Id.* ¶¶ 39-42.) Plaintiff contends that he did not commit the alleged criminal acts, and has suffered embarrassment, humiliation and reputational harm. (*Id.* ¶ 43, 48.) On September 10, 2007, the criminal charges against plaintiff were dismissed and sealed on motion of the prosecutor. (*Id.* ¶ 46.)

## DISCUSSION

### A. Standard of Review

In deciding a Rule 12(c) motion for judgment on the pleadings, courts apply the same standard as that applicable to a motion to dismiss for failure to state a claim under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the

non-moving party. *See LaFaro v. New York Cardiothoracic Group,*
*PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009). Accordingly, courts
must determine whether the complaint has pled "enough facts to
state a claim to relief that is plausible on its face." *Ruotolo*
*v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A
claim is plausible "when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Ashcroft v.*
*Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at
556). "Threadbare recitals of the elements of the cause of
action" do not suffice; "[w]hile legal conclusions can provide
the framework of a complaint, they must be supported by factual
allegations." *Id.* at 1949-50.

**B. Claims Arising under Section 1983**

The plaintiff brings this action pursuant to 42 U.S.C.
§ 1983 for the alleged deprivation of his rights under the
Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the
Constitution. In relevant part, Section 1983 provides that

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State . . . subjects, or causes to be subjected,
> any citizen of the United States or other person
> within the jurisdiction thereof to the
> deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action

>           at law, suit in equity, or other proper
>           proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citation omitted). To establish liability under Section 1983, a plaintiff must demonstrate that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).

Liberally construing the Complaint, plaintiff alleges that defendants, while acting under the color of state law, violated his constitutional rights by subjecting him to an unreasonable seizure, in violation of the Fourth Amendment; unlawful interrogation, in violation of the Fifth Amendment; cruel and unusual punishment, in violation of the Eight Amendment; and that a municipal policy or custom caused a deprivation of plaintiff's constitutional rights. (*See* Compl. ¶¶ 66-69.) Defendants contend that each allegation fails to state a claim. (Defs. Mem. at 4.)

## C. Alleged Constitutional Violations
   by the Individual Defendants

Plaintiff purports to raise claims under Section 1983, but fails to specify, as required to state a valid Section 1983 cause of action, which substantive constitutional rights defendant allegedly violated. In this regard, plaintiff's complaint does not appear to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests[,]" as required by Fed. R. Civ. P. 8(a). *See Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 212 (N.D.N.Y. 2008) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)); Fed. R. Civ. P. 8(a)(2) (requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").

Moreover, it appears that plaintiff has incorrectly sued NYPD Detectives Tammie Ordonez and "John Doe" in their "individual and official capacities." (*See* Compl. ¶ 10.) It is, however, well settled that a "state official sued in his official capacity is not a person within the meaning of Section 1983, and, consequently, is not subject to liability for depriving a person of constitutional rights." *Perez v. City of New York*, No. 07-CV-10319, 2009 U.S. Dist. LEXIS 50066, at *11 (S.D.N.Y. June 8, 2009) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Notwithstanding, the court liberally construes plaintiff's Complaint to allege three separate acts potentially giving rise to constitutional violations by the Individual Defendants: (1) false arrest; (2) unlawful interrogation; and (3) indifference to plaintiff's medical needs.[4]  In briefing this motion, plaintiff argues only that judgment on the pleadings is not warranted with respect to the false arrest claim, and appears to abandon the remaining claims.  (*See generally*, Pl. Mem.)  Notwithstanding, each claim is addressed below.

## 1. False Arrest Claim

Plaintiff was arrested and endured detention and interrogation on a charge which was ultimately dismissed.  The issue before the court, however, is not whether plaintiff is innocent of the crime charged — which he is presumed to be — but rather, whether there was probable cause for plaintiff's arrest.

The elements of a false arrest claim are that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (citation omitted); *see also Hygh v. Jacobs*,

---

[4] The court liberally construes plaintiff's Complaint because he would be permitted to replead.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead") (citations omitted).

961 F.2d 359, 366 (2d Cir. 1992) ("The elements of a claim of false arrest under § 1983 are 'substantially the same' as the elements of a false arrest claim under New York law.") (citing *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)). Only the last element is in dispute.

"There can be no federal civil rights claim for false arrest where the arresting officer had probable cause" to arrest. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (*citing Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Id.* at 119 (citations and internal quotation marks omitted). "To find that probable cause for an arrest existed, it is not necessary to show evidence beyond a reasonable doubt, . . . [n]or do police officers need to demonstrate that it is more probable than not [that] an offense has been committed to make a *prima facie* showing of criminal activity. Instead, the standard of probable cause requires only the probability of criminal activity." *Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F. Supp. 351, 354 (S.D.N.Y. 1992) (citations and internal quotation marks omitted). "Whether or not there was probable cause to arrest depends on the information available at the time of the

arrest, judged against the totality of the circumstances . . .

." *Morgan v. Nassau County*, No. 03-CV-5109 (SLT), 2009 U.S.
Dist. LEXIS 79180, at *12-13 (E.D.N.Y. Sept. 2, 2009) (citations
and internal quotation marks omitted).

"Even where probable cause is not found to exist, a
police officer sued for false arrest is immune from suit under
the doctrine of qualified immunity where 'arguable probable
cause' exists." *Rodriguez v. New York City Transit Auth.*, No.
06-CV-13762 (RJS), 2009 U.S. Dist. LEXIS 106464, at *19
(S.D.N.Y. Nov. 10, 2009) (citing *Escalera v. Lunn*, 361 F.3d 737,
743 (2d Cir. 2004)). "While arguable probable cause should not
be understood to mean almost probable cause, it exists where
officers of reasonable competence could disagree on the legality
of the defendant's actions." *Id.* (citing *Jenkins v. City of New
York*, 478 F.3d 76, 87 (2d Cir. 2007); *Lennon v. Miller*, 66 F.3d
416, 420 (2d Cir. 1995)) (internal quotation marks omitted).
"The essential inquiry in determining whether qualified immunity
is available to an officer accused of false arrest is whether it
was objectively reasonable for the officer to conclude that
probable cause existed." *Jenkins*, 478 F.3d at 87 (citations
omitted).

"[I]t is well-established that a law enforcement
official has probable cause to arrest if he received his
information from some person, normally the putative victim or

eyewitness, unless the circumstances raise doubt as to the
person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d
Cir. 2006) (citations and internal quotation marks omitted).
Absent specific facts suggestive of prevarication or
unreliability, "[t]he veracity of citizen complaints who are the
victims of the very crime they report to the police is assumed."
*Miloslavsky*, 808 F. Supp. at 355 (citing *Adams v. Williams*, 407
U.S. 143, 146-47 (1972)).

Here, plaintiff contends that probable cause for his
arrest was lacking because a reasonable officer would not have
credited the unsubstantiated complaint of a seven-year-old
child, reporting events that allegedly occurred when she was
between two and one-half and three and one-half years of age.
(*See* Pl. Mem. at 6; *see also* Compl. ¶ 15.)  Further, plaintiff
contends that (1) there is no evidence that the alleged victim's
claims were corroborated in any way; (2) the claims were not
made under oath; and (3) there is no evidence that the child
informant appreciated the difference between truth and
falsehood.  (*See* Pl. Mem. at 6-7.)

Based on a review of the Complaint, the court
concludes that plaintiff has pled sufficient facts to state a
false arrest claim against the Individual Defendants that is
plausible on its face.  The court does not conclude that an
arrest is unreasonable as a matter of law based on a statement

of a seven-year-old child about events that reportedly occurred
when the child was between two and one-half and three and one-
half years of age. Plaintiff, however, has pled sufficient
facts to cross "the line between possibility and plausibility"
concerning whether the circumstances should have raised doubts
as to complainant's reliability or veracity. *See Iqbal*, 129 S.
Ct. at 1949; *see also Twombly*, 550 U.S. at 557. Discovery may
plausibly reveal that the Individual Defendants lacked a
reasonable basis for believing either (1) that a crime had been
committed, or (2) that plaintiff was the perpetrator.[5]

Defendants cite to a number of distinguishable cases
which dismissed false arrest claims where law enforcement
officers were presented with different accounts from the
complainant and arrestee. (*See* Defs. Mem. at 7-9.) Defendants'
reliance on *Cabble v. City of New York*, No. 04-CV-9413 (LTS),
2009 U.S. Dist. LEXIS 26478 (S.D.N.Y. Mar. 30, 2009), is
misplaced. There, the court, *inter alia*, dismissed without
prejudice to replead, plaintiff's false arrest claim, finding
that plaintiff alleged no facts to suggest that the police had
any reason to doubt the complaints of two adult women that had

---

[5] At oral argument, plaintiff's counsel stated that plaintiff
might seek discovery concerning, among other things, whether the
complainant was shown a photo array, or whether plaintiff's name
was first mentioned by the complainant or by the Individual
Defendants. (*See* Transcript of Oral Argument on Oct. 8, 2009
("Tr.") at 4-7.)

been sexually assaulted by the plaintiff. *See Id.*, at *15-16. Similarly, in *Silver v. Kuehbeck*, 05-6316-cv, 217 Fed. Appx. 18 (2d Cir. Feb. 8, 2007), the Second Circuit affirmed the dismissal of a false arrest claim based on a finding that the defendant officer "clearly" had probable cause to arrest the plaintiff for aggravated harassment where the complaint alleged that plaintiff's "agitation had grown to anger" and he attempted to contact the complainant and left telephone messages "about her evident lack of consideration and disrespect[.]" *Id.* Further, in *Obilo v. City Univ. of New York*, No. 01-CV-5118 (DGT), 2003 U.S. Dist. LEXIS 2886, at *26 (E.D.N.Y. Feb. 28, 2003), the plaintiff was arrested for sexual assault reported by a female college student whom plaintiff alleged was his girlfriend. The court granted the arresting officer's motion to dismiss a false arrest claim where the pleadings indicated that the arresting officer relied on an exhaustive investigation by college campus security officers and had interviewed the complainant "one day after she filed her police complaint." *Id.* at *24. In *Jouthe v. City of New York*, No. 05-CV-1374 (NGG), 2009 U.S. Dist. LEXIS 18163 (E.D.N.Y. Mar. 10, 2009), the court granted the arresting officer summary judgment dismissing the plaintiff's false arrest claim after the parties had conducted discovery.

Further, based upon the Complaint, the Individual
Defendants have not established the existence of "arguable
probable cause" for purposes of qualified immunity.  Plaintiff
has plausibly alleged that under the circumstances, it would not
have been reasonable for an officer to have believed he or she
was justified in arresting plaintiff.  Accordingly, defendants
have not established that "the only conclusion a rational jury
could reach is that reasonable officers would disagree about the
legality of the defendant's conduct under the circumstances."
*See Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997) (citation
and internal quotation marks omitted).  Thus, the court declines
to dismiss plaintiff's false arrest claim against the Individual
Defendants.

### 2. Unlawful Interrogation Claim

Plaintiff claims that he suffered constitutional
injury by being interrogated without having a lawyer present,
and without having been first read his *Miranda* rights, in
violation of the Fifth Amendment.  (*See* Compl. ¶¶ 23-24, 61,
68.)  "The Supreme Court concluded [in *Chavez v. Martinez*, 538
U.S. 760 (2003)] that an officer could not be subjected to civil
liability for an alleged violation of the privilege against
compelled self-incrimination where the coerced statement is not
thereafter used against the person who gave the statement."
*Higazy v. Templeton*, 505 F.3d 161, 171 (2d Cir. 2007).  "[A]

run-of-the-mill *Miranda* violation, . . . can taint the evidence but is not independently actionable as a civil rights claim." *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003).

In *Higazy*, government officials used allegedly coerced statements by plaintiff Higazy as the basis for filing a criminal complaint and opposing bail. 505 F.3d at 167. The government later withdrew its complaint, and Higazy was released. *Id.* Higazy subsequently filed a federal civil rights action against officials. *Id.* at 168. The Second Circuit held that although Higazy's coerced statements were never used against him at a criminal trial, the government's use of his statements against him at the preliminary bail hearing provided a sufficient basis for alleging a violation of his Fifth Amendment rights. *Id.* at 170.

Here, plaintiff does not allege that the statements he made to the Individual Defendants were used against him in the criminal prosecution, in violation of the Fifth Amendment. Indeed, plaintiff asserts that he was arrested in spite of his statements that he could not have sexually assaulted the complainant in the manner described by the complainant. Accordingly, plaintiff's allegation that he was interrogated in violation of *Miranda*, and without being afforded counsel, fails to state a Section 1983 claim.

### 3. Medical Indifference Claim

Plaintiff claims that he was not permitted by the Individual Defendants to take necessary medications while he was in the custody of NYPD or DOC, "resulting in high blood sugar and worsening and aggravation of diabetes, blood pressure, and post traumatic stress disorder." (Compl. ¶ 37.) Although not specifically pled, the court liberally construes the Complaint to allege a claim of inadequate medical care or treatment and deliberate indifference in violation of the Due Process Clause of the Fourteenth Amendment.[6]

To establish a claim for deliberate indifference to a medical need, a plaintiff must allege facts demonstrating both an objective and a subjective element: (1) objectively, a deprivation must be "sufficiently serious," *i.e.*, "a deprivation that presents a condition of urgency, one that may produce death, degeneration, or extreme pain[;]" and (2) subjectively, the defendant officials must act with a reckless indifference, "that is, defendants were aware of plaintiff's serious medical

---

[6] A pretrial detainee's claims of inadequate medical treatment and deliberate indifference to serious medical needs are analyzed under the Fourteenth Amendment's Due Process Clause as opposed to the Cruel and Unusual Punishment Clause of the Eighth Amendment, but the tests are the same under the Eighth and Fourteenth Amendments. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (citing *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996); *Dzwonczyk v. Syracuse City Police Dep't*, No. 08-CV-557 (NPM), 2008 U.S. Dist. LEXIS 103315, at *37-38 (N.D.N.Y. Dec. 22, 2008).

needs and consciously disregarded a substantial risk of serious harm." *See Dzwonczyk*, 2008 U.S. Dist. LEXIS 103315, at 38-39 (internal quotation marks and citations omitted); *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

With respect to the first element — that plaintiff was detained under conditions posing a substantial risk of serious harm — plaintiff alleges that the Individual Defendants failed to provide him with prescribed medications from the time of his arrest, at approximately 12:00 p.m. on October 5, 2006, until his release, at approximately 1:00 a.m. on October 7, 2006, or approximately 37 hours. (*See* Compl. ¶¶ 14, 36-37.) Defendants contend that plaintiff has failed to "plead that he suffers from an objectively serious medical condition sufficient to state a claim for deliberate [medical] indifference." (Defs. Mem. at 12.) Although the Second Circuit has articulated factors that are relevant to whether a medical condition is "sufficiently serious," such as whether a reasonable doctor or patient would find it important and whether it causes chronic and substantial pain, *see, e.g.*, *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003), "the Court cannot make a conclusive determination on that issue in this case at the motion to dismiss stage, based upon the allegations in the complaint." *See Thomas v. Tisch*, No. 08-CV-400 (JFB), 2009 WL 701009, at *7 (E.D.N.Y. Mar. 11, 2009). Thus, liberally construing plaintiff's Complaint, the court

declines to dismiss plaintiff's medical indifference claim on
defendant's contention that plaintiff has not alleged that he
suffers from an objectively serious medical condition. *See id.*
at *7-8 (holding that complaint stated a claim where plaintiff
alleged, *inter alia*, that a twenty-hour delay in receiving
medication for diabetes and epilepsy resulted in mental anguish,
pain and suffering and ridicule from other inmates and
officers).

Even assuming that plaintiff has satisfied the first
element that he suffered substantial harm from the Individual
Defendants' failure to treat a serious medical condition,
plaintiff has not plausibly alleged that the defendants acted
with reckless or deliberate indifference toward plaintiff's
medical condition. Plaintiff alleges that he did not alert
officers that he suffered from any medical condition until
approximately two hours after his arrest. (*See* Compl. ¶¶ 24,
29.) After being informed of plaintiff's condition, the
Individual Defendants returned to plaintiff's home and retrieved
his medications. (Compl. ¶ 30.) While in custody, plaintiff
was transferred numerous times: he was moved from the Special
Victim's Unit to the 112th Precinct to be fingerprinted, then to
Queens Central Booking to await arraignment, then to Queens
Criminal Court to be arraigned, and ultimately to a DOC facility
in the Bronx from which he was released. (*See* Compl. ¶¶ 18, 31,

35.) Plaintiff does not allege that he requested immediate emergency care at any of these locations, or that he informed an official at any of the locations that he had a serious medical condition that caused extreme pain, was life-threatening or fast-degenerating. Thus, plaintiff's Complaint does not allege anything more than an inadvertent failure to provide adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) ("inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference"); *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). Accordingly, plaintiff's medical indifference claim is dismissed.

**D. Alleged Constitutional Violations
by the Municipal Defendants**

As an initial matter, although plaintiff purports to name the NYPD and DOC as defendants, both are non-suable agencies of defendant City. *See Wray v. City of New York*, 340 F. Supp. 2d 291, 303 (E.D.N.Y. 2004) ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.") (*quoting* NYC Charter § 396) (judgment vacated on other grounds); *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (noting that "[t]he district court correctly noted that the NYPD is a non-suable agency of the City.")

(citing *Wray*, 340 F. Supp. 2d at 303); *Adams v. Galletta*, 966 F.

Supp. 210, 212 (S.D.N.Y. 1997) ("where a plaintiff has named the

Department of Corrections as a defendant he has sued a non-

suable entity").  Accordingly, all claims are dismissed against

the NYPD and the DOC.  *See Maier v. New York City Police Dep't*,

No. 08-CV-5104 (ILG), 2009 U.S. Dist. LEXIS 78821, at *6 (Sept.

1, 2009) (dismissing all claims against the NYPD and DOC as non-

suable entities).

Plaintiff alleges that the Municipal Defendants are

liable for constitutional violations under Section 1983.  To

impose liability under Section 1983 on a municipality for the

acts of its employees, a plaintiff must "plead and prove . . .

(1) an official policy or custom that (2) causes the plaintiff

to be subjected to (3) denial of a constitutional right." *Zahra

v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citation

omitted); *see Monell v. Department of Soc. Servs. of City of New

York*, 436 U.S. 658, 694 (1978).[7]

"Following *Monell* and its progeny, a municipality

cannot be held liable under § 1983 under a theory of *respondeat

superior*." *Abreu v. City of New York*, 657 F. Supp. 2d 357, 360

---

[7] Plaintiff's memorandum of law in opposition to defendants'
motion does not mention municipal liability or cite any theory
under which the Municipal Defendants would be liable.  The
Complaint, however, alleges municipal liability arising out of
the Municipal Defendants' "customs, policies, usages, practices,
procedures and rule[s]," suggesting an intent to invoke
liability under the theory of *Monell.*  (Compl. ¶ 64.)

(E.D.N.Y. 2009) (citations omitted). "Rather, there must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "[A] plaintiff may establish this required causal link by showing that a defendant was deliberately indifferent to the training, supervision, or discipline of its employees." *Id.* (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127-130 (2d Cir. 2004)); *see also Jenkins*, 478 F.3d at 94 ("[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.") (citing *Harris*, 489 U.S. at 388).

In the context of a motion to dismiss, "[t]o allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. County of Monroe*, No. 09-0235-cv, 2009 U.S. App. LEXIS 24120, at *4 (2d Cir. Nov. 4, 2009) (citing *Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008)); *see also Iqbal*, 129 S.Ct. at 1951; *Twombly*, 550 U.S. at 555. Mere "boilerplate" assertions that a

23

municipality has such a custom or policy which resulted in a deprivation of the plaintiff's rights is insufficient to state a *Monell* claim. *See Bradley*, 2009 U.S. Dist. LEXIS 51532, at *8-9 (citations omitted).

Here, plaintiff's Complaint contains only a conclusory allegation that the Municipal Defendants had "de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees . . . [which] were a direct and proximate cause of the unconstitutional conduct alleged." (Compl. ¶ 58.) "In this regard, [plaintiff's] complaint succinctly states one of the core legal concepts animating *Monell* liability. But it does absolutely nothing else." *See Abreu*, 657 F. Supp. 2d at 360-61. Plaintiff alleges no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct. Moreover, plaintiff's allegation that the Municipal Defendants acted pursuant to "de facto policies, practices, customs, and usages" (Compl. ¶ 58), without any facts suggesting the existence of the same, are plainly insufficient to state a Section 1983 claim against the Municipal Defendants. *See Abreu*, 657 F. Supp. 2d at 360-61; *Bradley*, 2009 U.S. Dist. LEXIS 51532, at *8-9 (dismissing municipal liability claim where the "[c]omplaint's conclusory, boilerplate language — that the City 'fail[ed] to adequately train, discipline, and supervise' employees and

'fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees" — [was] insufficient to raise an inference of the existence of a custom or policy).  Accordingly, plaintiff's Section 1983 claim against the Municipal Defendants is dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings is denied with respect to plaintiff's claim for false arrest against the Individual Defendants, and granted in all other respects.  The parties are respectfully referred to Magistrate Judge Azrack, to whom this case is assigned for pretrial supervision.

SO ORDERED.

Dated: Brooklyn, New York
        March 19, 2010

                                    /s/
                        _____
                        KIYO A. MATSUMOTO
                        United States District Judge
                        Eastern District of New York